UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEX KWAKU PEPRAH, )
)
        Plaintiff, )
)
    v. ) Case No. 12-cv-2564
)
U.S. Citizenship and Immigration Services, )
DEPARTMENT OF HOMELAND SECURITY, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Petitioner, Alex Kwaku Peprah, a native and citizen of Ghana, attempted to enter the United States in 1996 using a fake Canadian passport. That effort failed, but Peprah was admitted for permanent residence in 2004. When Peprah sought naturalization years later, in October 2009, immigration officials concluded he had made false statements earlier. The Department of Homeland Security has denied Peprah's naturalization application and initiated removal proceedings. Peprah seeks relief from these decisions, but he has not met his burden to show that he is eligible for citizenship. On the parties' cross-motions for summary judgment, the court enters judgment in favor of the United States.

## BACKGROUND

The facts relevant to these motions are essentially undisputed. Alex Kwaku Peprah, a native and citizen of Ghana, first attempted to enter the United States on December 5, 1996, using a falsified Canadian passport bearing the name Bernard Osei Adjei. (Def.'s Statement of Undisputed Material Facts [39-1], hereinafter "Def.'s Statement of Material Facts," ¶¶ 1–2.) During a secondary inspection interview at the airport, Peprah signed a sworn statement declaring that his real name was Issac Bonsu and that his father had bought him the Canadian passport. (*Id.* ¶ 4.) Rather than voluntarily departing the United States, Peprah requested a hearing and was detained at Berks County Prison in Leesport, Pennsylvania. (*Id.* ¶¶ 5, 6.)

After the hearing, the judge found Peprah was excludable pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), as an alien attempting to gain entry through fraud or misrepresentation (a charge Peprah conceded); and under 8 U.S.C. § 1182(a)(7), for failure to have proper documentation. (*Id.* ¶¶ 7–8.) The Immigration and Naturalization Service removed Peprah to Ghana in 1997. (*Id.* ¶ 9.)

On September 26, 2003, Peprah filed an application for an Immigrant Visa and Alien Registration with the U.S. Embassy in Ghana. (*Id.* ¶ 10.) Under penalty of perjury, Peprah swore on his June 2, 2004 Visa Application that the only alias he had ever used was Peprah Mensah Alex; that he had never before visited the United States; that he had never sought entry into this country through fraud or misrepresentations; and that he had never been refused admittance into the United States. (*Id.* ¶¶ 11–12.) On November 14, 2004, Peprah was admitted to the United States as a lawful permanent resident. (*Id.* ¶ 13.)

On October 16, 2009, Peprah filed a Form N–400 naturalization application with the United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 14.) In the application form, Peprah stated under oath that he had never been arrested, cited, or detained; that he had never been to jail or prison; that he had never been removed, excluded, or deported from the United States; and that he had never been ordered to be removed, excluded, or deported from the United States. (*Id.* ¶¶ 16–17.) Peprah appeared for an interview on February 2, 2010, where he was sworn and was asked the same questions as those that appeared on the Form N-400, and again responded in the negative to each of them. (*Id.* ¶¶ 18–27.)

At some point, Immigration Services Officer Hearold Lacy, who conducted the interview, learned that there was a "second alien file" on Peprah. (*Id.* ¶ 28; Hearold Lacy Decl., Ex. J to Def.'s Cross-Mot. for Summ. J. [39-12] ¶ 17.) Then, on August 2, 2011, USCIS denied Peprah's application on the grounds that he was of poor moral character pursuant to 8 C.F.R. § 316.10(b)(2)(iv) and had not been lawfully admitted for permanent residency as required by 8 C.F.R. § 316.2(a)(2). (Def.'s Statement of Material Facts ¶¶ 29–30; Aug. 2, 2011 USCIS

Decision, Ex. K to Def.'s Cross-Mot. for Summ. J. [39-13].) Peprah requested a review hearing on this decision, and on December 5, 2011, another Immigration Services Officer interviewed him. (Def.'s Statement of Material Facts ¶¶ 31–32.) Again Peprah was put under oath. When asked if he had ever lied to any U.S. government officials, Peprah responded, "apparently when I applied for the immigrant visa – it was not my intention." (*Id.* ¶¶ 33–38.) He again denied ever having been in jail or prison, and failed to disclose the circumstances in which he had been denied entry in 1996. (*Id.* ¶¶ 37, 39.) The Chicago Field Officer Director of USCIS affirmed the denial of Peprah's application for naturalization. (*Id.* ¶ 40; Dec. 14, 2011 USCIS Decision, Ex. O to Def.'s Statement of Material Facts [39-17].)

On April 8, 2012, Peprah filed this action, challenging USCIS's decision to deny naturalization. (Def.'s Cross Mot. for Summ. J. [39] at 6.) While this case was pending, on June 20, 2012, the Department of Homeland Security issued a Notice to Appear, effectively initiating proceedings to remove Peprah from the United States. (Def.'s Statement of Material Facts ¶ 41; Notice to Appear, Ex. P to Def.'s Statement of Material Facts [39-18], hereinafter "Notice to Appear.") An immigration judge ordered Peprah removable under 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who sought to procure admission to the United States by fraud or willful misrepresentation. (Def.'s Statement of Material Facts ¶ 43.) Specifically, the Notice to Appear cited Peprah's failure to disclose, in his 2004 Visa Application, his earlier attempted entry into the United States; his failure to disclose his use of a fraudulent Canadian passport; his failure to disclose his use of aliases; and his failure to disclose the 1997 order excluding and deporting him. (Notice to Appear at 3.) Peprah then applied to the immigration judge for a waiver of his inadmissibility. (Def.'s Statement of Material Facts ¶ 44.) That application remained pending as of the filing of the parties' cross-motions for summary judgment (*id.* at ¶ 45), but was denied on August 22, 2014. (Aug. 22, 2014 Immigration Judge Decision, Ex. A to Notice of Immigration Judge's Decision Denying Waiver of Inadmissibility [48-1].) The Immigration Court denied Peprah's application for a waiver because 8 U.S.C. § 1227(a)(1)(H)

only permits the waiver of fraud committed at the most recent admission—in Peprah's case his 2004 entry—and therefore could not, now, excuse the fraud committed in 1996. (Aug. 22, 2014 Immigration Judge Decision, Ex. A to Notice of Immigration Judge's Decision Denying Waiver of Inadmissibility [48-1] 9–10.) Therefore, even excusing his misrepresentations in 2004, the Immigration Court concluded, Peprah was not "otherwise admissible," as required by statute, due to his earlier misrepresentations in 1996. The Immigration Court ordered Peprah removed to Ghana, but granted Peprah voluntary departure if he departs on or before October 22, 2014. (*Id.* at 12.)

## DISCUSSION

To qualify for naturalization, an individual must first demonstrate that he has:

- resided continuously in the United States for at least five years immediately prior to applying for naturalization "after being lawfully admitted for permanent residence" . . . ;

- resided continuously within the United States from the date of the application up to the time of admission to citizenship; and

- during all of these periods "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

*Babatunde v. Napolitano*, No. 09–C–2600, 2011 WL 332523, at *6 (N.D. Ill. Jan. 31, 2011) (quoting 8 U.S.C. § 1427(a)(1)-(3)); *see also* 8 C.F.R. § 316.2.

As noted, both sides seek summary judgment. Defendant contends that Peprah is ineligible for naturalization because he is not lawfully admitted to the United States, and he is precluded from showing that he is a person of good moral character under the statute. *See* 8 U.S.C. § 1427(a). Peprah contends that he does in fact meet the statutory requirements, and therefore, he should not have been denied naturalization.

Summary judgment is proper if the moving party shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(a)). A fact is material if it might

affect the outcome of the suit under governing law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir.2012). As noted, the facts here are largely undisputed; indeed, though he is represented by counsel, Peprah did not submit a LR 56.1 statement in opposition to the government's statement of undisputed facts. Instead, the parties dispute whether the circumstances support the decision of USCIS to deny Peprah's application for citizenship.

## I. Lawful Admission

The first dispute concerns whether, in 2004, Peprah was lawfully admitted for permanent residence in accord with 8 U.S.C. § 1427(a)(1). Peprah bears the burden of proof on this issue. *Berenyi v. District Director*, 385 U.S. 630, 637 (1967) (applicant for citizenship must establish eligibility "in every respect"); 8 C.F.R. 316.2(b) (applicant "shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident . . . .") Defendant argues that Peprah was never lawfully admitted because his 2004 Visa Application was based on fraud or misrepresentation; specifically, he failed to disclose (1) his attempts to fraudulently enter the United States in 1996, and (2) his prior use of aliases and prior visits to the United States. Peprah, for his part, argues that because he obtained an immigration visa, and met all of the documentary requirements, he was lawfully admitted. In short, Peprah appears to believe that issuance of a visa, and his entry in reliance on that visa, are dispositive on the issue of lawful admission.

The government's position rests on the plain language of 8 U.S.C. § 1182(a)(6)(C)(i) – the provision concerning inadmissible aliens. The relevant language provides:

> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States: Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a

> visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

*See* 8 U.S.C. § 1182(a)(6)(C)(i). Peprah does not dispute that in 1996 he entered the country using a falsified Canadian passport. It is firmly established that "an individual who knowingly enters the United States on a false passport has engaged in willful fraud and misrepresentation of material fact." *Esposito v. v. Immigration and Naturalization Service*, 936 F.2d 911, 912 (7th Cir. 1991). Therefore, Peprah's 1996 deportation rendered him inadmissible, absent his obtaining a waiver from an immigration judge. *See Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 800 (7th Cir. 2005), citing 8 U.S.C. §§ 1182(a)(6)(C)(i) & 1255(a). Peprah did not obtain a waiver of inadmissibility to excuse the 1996 deportation. The Immigration Judge's recent denial of Peprah's application for a waiver of inadmissibility further confirms that Peprah was inadmissible in 2004. The Immigration Court reasoned, even excusing the misrepresentations in his 2004 Visa Application, the attempted entry in 1996 and subsequent deportation rendered Peprah independently inadmissible. (Aug. 22, 2014 Immigration Judge Decision, Ex. A at 9–10.)

Although he was inadmissible, Peprah was nevertheless able to secure a visa in 2004. The facts surrounding his attempt to enter the United States in 1996 establish that his successful Visa Application in 2004 rested on fraud or misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i). Peprah admits that he attempted to enter in 1996 using a fraudulent Canadian passport. It is "crystal clear" that such an attempt constitutes "willful fraud and misrepresentation of a material fact." *Esposito,* 936 F.2d at 912 n. 1. When he applied for his visa, and at hearings before immigration officials, Peprah lied under oath about his attempted entry in 1996. Peprah effectively admits that those misrepresentations were willful. In his affidavit, Peprah acknowledges that his statements were not truthful; he explains that he "was advised" that if he agreed to leave the country voluntarily, "the case would be permanently closed against me and I would not have to disclose it to anyone." (Peprah Aff., Ex. 1 to Peprah's Resp. [45-1] ¶¶ 2, 3.).

The record is inconsistent with Peprah's assertion that he agreed to leave the country voluntarily in 1996. To the contrary, Peprah declined voluntary departure and proceeded to a hearing at which an immigration judge found him excludable. In any event, as the government points out in its response, even if the court were to credit that account, it does not explain Peprah's failure to disclose in his 2004 Visa Application, his use of aliases, or his denial of having ever previously visited the United States. (Def.'s Resp. [47] 4.) These misrepresentations were material, as well, because had he disclosed his earlier deceptive conduct, he would not have been granted a visa. *See* 8 U.S.C. § 1182(a)(6)(c)(i) (an alien who previously sought admission to the United States by fraud or willful representation is ineligible for a visa). The Immigration Court did not excuse these misrepresentations, (Aug. 22, 2014 Immigration Judge Decision, Ex. A.) and Peprah therefore remains ineligible to naturalize because his entry in 2004 was based on willful misrepresentations. The court concludes that Defendant is entitled to summary judgment on this issue. As his entry into the United States in 2004 rested on false statements, Peprah was not lawfully admitted to this country.

## II. Good Moral Character

Peprah has argued that USCIS erred in determining that he is not a person of good moral character. The government has not relied on this determination in seeking summary judgment, but the court recognizes that false statements at his naturalization interviews defeat Peprah's argument on this issue, as well. An applicant fails the "good moral character" requirement if he "has given false testimony for the purpose of obtaining" immigration or naturalization benefits. *Kungys v. United States*, 485 U.S. 759, 779-80 (1988). The statute "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.* This includes the period during which he is interviewed for the purposes of naturalization. *United States v. Vlamakis*, No. 01-cv-2396, 2002 WL 230909, at *4

(N.D. Ill. Feb. 15, 2002). Peprah's false testimony is an independent basis for USCIS's decision.

## **CONCLUSION**

The USCIS did not err in concluding that Peprah is ineligible for U. S. citizenship. He was not lawfully admitted to the United States, and he gave false testimony during his naturalization interviews. Peprah's motion for summary judgment [40] is denied, and the government's motion for summary judgment [39] is granted. Judgment is entered in favor of the United States.

ENTER:

Date: September 29, 2014

*[signature]*

United States District Judge